**William B. KOHN, Plaintiff,**

**v.**

**Joseph MUCIA, Leroy Martin, James E. O'Grady, Jeremy D. Margolis, E. Collins and the City of Chicago, Defendants.**

**No. 90 C 04194.**

United States District Court, N.D. Illinois, E.D.

May 31, 1991.

David Feldman, Jerome Feldman, and Judith A. Halprin, Feldman and Halprin, Chicago, Ill., for plaintiff.

Randolph M. Johnston, Asst. State's Atty., Chicago, Ill., for defendants.

John Simon, Asst. Atty. Gen., Gen. Law Div., Chicago, Ill., for defendant Jeremy Margolis.

Gregory J. Wojkowski, Chief Asst. Corp. Counsel, Chicago, Ill., for defendants City of Chicago, Leroy Martin, Joseph Mucia and E. Collins.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiff, William Kohn, brought this three-count action under 42 U.S.C. § 1983, challenging the validity of certain sections of the Illinois Vehicles Code, and certain related sections of the Municipal Code of Chicago which authorize law enforcement agencies to seize and dispose of motor vehicles. Kohn filed suit on behalf of himself and all others similarly situated, against the City of Chicago; Joseph Mucia, individually, and in his capacity as Commanding Officer of the Automotive Pounds Section, Department of Police, City of Chicago; Leroy Martin, Superintendent of the Chicago Police Department, individually, in his official capacity and on behalf of all others similarly situated; James O'Grady, Sheriff of Cook County, individually, in his official capacity and on behalf of all others similarly situated; Jeremy Margolis, Director of the Illinois Police Department;[1] Edward Collins, a Chicago Police Officer; and John Doe, a person of unknown identity who tows vehicles to the Chicago Police Department Auto Pound.

Currently pending for our consideration are several motions to dismiss and Kohn's motions for class certification and for partial summary judgment. Margolis has moved to dismiss the action against him for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). O'Grady has also moved to dismiss on the same grounds, but has framed his motion under Rule 12(b)(6) instead. Martin, Mucia, Collins, and the City of Chicago (City defendants), have moved to dismiss Kohn's complaint under

---

1. After Kohn filed his complaint, Michael Sheahan was elected to the position of Sheriff of Cook County, and Terrance Gainer was appointed as Director of the Illinois State Police. Sheriff Sheahan and Director Gainer are automatically substituted as defendants, in their official capacities, pursuant to Fed.R.Civ.P. 25(d)(1).

Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, we decline to certify a class action. We grant Margolis and O'Grady's motions to dismiss because Kohn lacks standing to pursue a claim against them. We grant the City defendants' motion to dismiss in part, and grant partial summary judgment in favor of Kohn.

## I. Background

The allegations of the amended complaint, and the additional submissions by the parties reveal the following facts. Kohn was the owner of a 1976 BMW automobile. Kohn's car was properly registered with the State of Illinois, and displayed current Illinois license plates. On July 24, 1989, Collins ordered defendant John Doe to tow Kohn's car from its legal parking space across the street from Kohn's apartment, at 7726 North Eastlake Terrace, Chicago, Illinois. Kohn did not personally receive prior notice of the towing nor had a notice been posted on the car that it would be towed.

The Chicago Police Vehicle Tow Report described the tow as both an abandoned tow and an immediate ("hazard") tow. The report states that the car was "in a state of disrepair, rendering it incapable of being driven," and that it was "obstructing traffic flow" and was a "hazzard [sic] to traffic." [2] Kohn alleges that the specific description of disrepair noted in the report, "2 flats, no grill, rust all around," was "in part inaccurate," but he does not specify in what respects the report was inaccurate. Kohn maintains that the car was "intact," in "operating condition," and not abandoned. Thus, he disputes that the car was incapable of being driven.

Subsequent to impounding Kohn's car on July 24, 1989, the police sold it for scrap metal on August 14, 1989. The police acted under the authority of Ill.Rev.Stat. ch.

95½ § 4-209 (Disposal of Unclaimed Vehicles Without Notice) which provides for the sale, as junk, of impounded vehicles that are more than seven years old if disposition information has not been received from the registered owner within ten days of impoundment. Kohn alleges that he did not receive notice of the towing, impoundment or sale prior to December, 1989.

Count I of the amended complaint seeks an order certifying plaintiff and defendant classes, and a declaration that certain provisions of the Illinois Vehicle Code, Ill.Rev. Stat. ch. 95½ §§ 4-201 through 4-214, are unconstitutional. Kohn claims that these sections violate the due process and equal protection clauses of the Fourteenth Amendment, and his Fourth Amendment right to be free from unreasonable searches and seizures. The challenged provisions provide for, *inter alia*, the removal and disposition of abandoned vehicles and vehicles creating a traffic hazard, and for notice to the owners of these vehicles. Count I also asks us to enjoin defendants Martin and O'Grady, and the defendant classes they represent, and defendants Mucia, Margolis, and the City of Chicago, from acting under the authority of Chapter 95½ §§ 4-201 through 4-214. Kohn complains that the provisions do not sufficiently define the requisite appearance characteristics that would allow a police officer to presume a vehicle is abandoned; that they permit seizure and detention of motor vehicles without prior notice and an opportunity for a hearing in violation of due process; that they authorize seizure and detention of motor vehicles without inquiry into probable cause for seizure and detention; and that they authorize procedures which allow for the sale of impounded motor vehicles without proper notice and opportunity for hearing.

Count II of the amended complaint claims that sections 27-200, 27-360, and 27-372 [3] of the Municipal Code of Chicago

---

**2.** Illinois Revised Statute ch. 95½ § 4-203 (Removal of Motor Vehicles) provides for the towing of vehicles abandoned in an urban district for ten hours or more, and for the immediate towing of vehicles creating a traffic hazard. Section 9-104-010(3) and (4) (prior code § 27-

360) of the Municipal Code of Chicago authorize the Chicago Police Department to tow abandoned or hazardous vehicles to a city vehicle pound.

**3.** These sections of the Municipal Code of Chicago have been renumbered as of July 12, 1990,

violate the fourth and fourteenth amendments in essentially the same respects as the Illinois Revised Statute provisions, and asks the court to enjoin defendants Mucia, Martin, and the City of Chicago from following the procedures in sections 27–360 and 27–372 of the Municipal Code of Chicago. Conversely, Count II also seeks an injunction enjoining defendants Mucia, Martin, and the City of Chicago from failing to follow the certified mail notice provisions of sections 27–423 through 27–429 [4] of the Municipal Code of Chicago. Count III seeks damages of $30,000 for the plaintiff, and damages to the plaintiff class of an undetermined amount.

## II. Plaintiff Class Certification

Kohn seeks certification of two plaintiff classes under Fed.R.Civ.P. 23. The first class consists of all Illinois residents (1) whose then currently licensed or registered motor vehicles were more than seven years old at the time they were seized, detained and impounded as abandoned, lost, stolen or unclaimed vehicles by Illinois law enforcement agencies; (2) whose motor vehicles were subsequently sold or destroyed without their consent, or may be seized, detained and impounded and sold or destroyed without their consent; and (3) who did not or may not receive notice by certified United States mail, return receipt requested, of the seizure, detention and impoundment before the destruction or sale of their motor vehicles by law enforcement agencies ("Class I").

Kohn's second proposed class consists of all persons residing in Illinois (1) whose then currently licensed or registered motor vehicles were seized, detained and impounded as abandoned, lost, stolen or unclaimed vehicles by the City of Chicago or its agents or may be so seized, detained and impounded by the City of Chicago or its agents or may be so seized, detained and impounded, pursuant to Ill.Rev.Stat. ch. 95½ §§ 4–201, 4–203, 4–208 and 4–209, or pursuant to §§ 27–360, 27–372, and 27–423 through 27–429 of the Municipal Code

of Chicago; (2) whose vehicles were subsequently sold or destroyed without their consent, or may be seized, detained and impounded and sold or destroyed without their consent, and (3) who did not or may not receive notice by certified United States mail, return receipt requested, of the seizure, detention and impoundment before the destruction or sale of their motor vehicles by or at the direction of the City of Chicago or its agents; or whose vehicles were not safely kept for a period of thirty days from the date of their impoundment by the City of Chicago or its agents ("Class II").

In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976). Federal Rule of Civil Procedure 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

We begin with the requirement that a plaintiff class must be so numerous that the joinder of all the members is impracticable. Fed.R.Civ.P. 23(a)(1). The size of the class and the impracticability of joinder must be positively shown and not merely speculative. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir.1989); *Kinzler v. New York Stock Exchange*, 53 F.R.D. 75 (S.D.N.Y.1971).

To prove numerosity Kohn offers evidence that the City of Chicago disposed of 159,287 vehicles between July 24, 1988 and October, 1990. Kohn's complaint also includes the first page of a Contract Sales

sections 9–4–010, 9–104–010, and 9–88–030, respectively.

4. These sections are now listed as sections 9–108–010 through 9–108–080 of the Municipal Code of Chicago.

Report produced by the City defendants at a deposition. It shows, on that one page at least, that the majority of the cars destroyed were seven years old or older. Kohn accordingly posits that "[e]ven if only 10% of [all vehicles disposed of] were older than seven years and had a valid registration at the time of the towing, that would still amount to nearly 16,000 potential class members." Although he admits that figure is not precise, Kohn argues that when it is "difficult to determine the precise number of members in the class, the plaintiff need not allege an exact figure: a good faith estimate is sufficient." *Harris v. General Dev. Corp.*, 127 F.R.D. 655, 660 (N.D.Ill.1989); *see also Long v. Thornton Township High School Dist.*, 82 F.R.D. 186, 189 (N.D.Ill.1979). We do not question that proposition, nor its general applicability in this case. But Kohn's showing as to the possible size of the classes in reliance on that proposition is incomplete. In both *Harris* and *Long* the plaintiffs presented evidence of a large number of class members; it was only the *exact number* of class members that was in question.

In the present case, however, the question is not "what is the precise size of the class," but rather "is the class sizable at all?" Although he has presented evidence of the number of cars disposed of in a two year period by the City of Chicago, and has provided an indication that many of these cars were older than seven years, he has presented no basis in fact regarding whether any of these vehicles were properly registered. Leaving that crucial deficiency aside, even were we willing to assume, at least for the initial certification of the classes, that a sizeable number of vehicles disposed of were both older than seven years and properly registered, the inquiry nevertheless is not complete since these two factors alone do not define the classes narrowly enough.

In order to ensure that the commonality and typicality requirements of Rule 23(a)(2) and (a)(3), the plaintiff classes must be limited to those who, like the plaintiff, received no notice whatsoever prior to the destruction of their vehicle. The classes should not include those who actually received notice by first class mail, because they, unlike the plaintiff, would have had a chance to save their vehicles from destruction. Kohn and these plaintiffs would not share the requisite commonality of facts, nor would Kohn's claim be typical of these others' claims. Failure to exclude from the class those who received some pre-disposal notice would require a case-by-case determination of whether class members actually received notice, and would make the action unmanageable. *Cf. Goichman v. Aspen*, 590 F.Supp. 1170, 1173–74 (D.Colo. 1984) (the variety of vehicle impoundment procedures afforded the proposed plaintiff class militated against the certification of the class). Further, the classes should also be limited only to those who had kept their current addresses on file with the Secretary of State, affording the relevant police agencies the opportunity to locate them. Once the classes have been properly narrowed to those people whose cars were older than seven years and properly registered when destroyed; who received no notice whatsoever; and whose then current addresses were on file with the Secretary of State, then it is only speculation to claim that the classes are sufficiently numerous to satisfy Rule 23, based on the showing that Kohn has made.[5] Having failed to meet his burden of showing with respect to this matter, Kohn's motion for class certification is denied.

### III. Margolis and O'Grady's Motions to Dismiss and Kohn's Motion to Certify Defendant Classes

█ Margolis and O'Grady each move to dismiss the complaints against them be-

---

5. We additionally note the potential for fraud in certifying classes of the type that Kohn seeks. There may be people who did not receive any notice at the time their cars were destroyed, yet who in any event were not concerned with what might happen to their cars. These people could now claim that such destruction was against

their wishes. A case-by-case determination would be required to ascertain whether these owners otherwise knew their cars had been impounded and whether their failure to act upon this knowledge comprised consent to the destruction of their cars.

**354**

cause of a lack of a case or controversy between themselves and Kohn. This "standing" requirement is mandated by Article III of the United States Constitution which requires that an actual case or controversy exists before a court may exercise its judicial power. *J.N.S. Inc. v. Indiana*, 712 F.2d 303, 305 (7th Cir.1983). An actual case or controversy is a threshold requirement which must be met by those seeking to invoke the jurisdiction of the federal courts. *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). A possible future controversy which may arise due to a defendant's general policy of enforcing laws is insufficient to meet this requirement. *J.N.S. Inc.*, 712 F.2d at 305. The standing requirement ensures that opposing parties in a suit have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions...." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Neither the Sheriff of Cook County or the Director of the Illinois State Police had anything to do with Kohn losing his car. Kohn lives in Chicago and his car was towed and sold for scrap by the Chicago Police Department, which is independent of the Cook County Sheriff's department and the Illinois State Police. Kohn argues, however, that Margolis and O'Grady are proper defendants because they are "juridically linked" with the Chicago Police Department. "A 'juridical link' is some legal relationship which relates all defendants in a way such that [a] single resolution of the dispute is preferred to a multiplicity of similar actions." *Thillens, Inc. v. Community Currency Exchange Ass'n*, 97 F.R.D. 668, 676 (N.D.Ill.1983). The juridical link exception is generally invoked with respect to the certification of defendant classes in class action suits. *See e.g. La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973) (proposed defendant class of pawnshops not juridically linked); *Hopson v. Schilling*, 418 F.Supp. 1223 (N.D.Ind.

1976) (juridically linked all Indiana township trustees); *Mudd v. Busse*, 68 F.R.D. 522 (N.D.Ind.1975) *aff'd without opinion*, 582 F.2d 1283 (7th Cir.1978), *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979) (no juridical link among all Indiana judicial officers); *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979) (defendant class of sheriffs juridically linked); *De Allaume v. Perales*, 110 F.R.D. 299 (S.D.N.Y.1986) (defendant class of 58 county commissioners juridically linked). The application of the juridical link exception has been held to be most appropriate where "all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute ... which is alleged to be unconstitutional." *Mudd*, 68 F.R.D. at 528. It has been explained as a "procedural device perhaps sometimes required by the legal fictions surrounding the case law between the Eleventh Amendment and the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 [52 L.Ed. 714 (1908) ]." *Id.*

In the case at hand, Kohn has sought certification of two defendant classes: one consisting of all the county sheriffs in Illinois, the other consisting of the superintendents of all city police departments in Illinois. He accordingly asks us to juridically link both Margolis and the two classes to Martin, the Superintendent of the Chicago Police Department. We do not believe that this case warrants application of the doctrine. Although the defendants in the instant case are state officials all charged with enforcing the same constitutionally challenged state statutes, we are not persuaded that "a single resolution of the dispute [would be] preferred to a multiplicity of similar actions." *Thillens*, 97 F.R.D. at 676. The juridical link exception serves its best function in class actions involving both plaintiff and defendant classes as means of drawing together "typical" claims by identically situated plaintiffs and defendants. In other words, properly applied, the juridical link doctrine essentially confers the standing of each indi-

vidual class member on the class representative.

Since we do not believe that a plaintiff class should be certified, the justification for juridically linking the proposed defendants is greatly diminished. It is undisputed that Kohn individually has no grounds for bringing a damage action against any of the proposed defendant class members except for Martin. Further, with respect to Kohn's claim for declaratory and injunctive relief, we see no need to certify defendant classes of sheriffs and police superintendents. Kohn has offered no reason to believe that these public officials will not comply with our ruling today as to the constitutionality of the sections of the Illinois Motor Vehicles Code and the Municipal Code of Chicago. *See* 3B Moore's Federal Practice ¶ 23.40[3] (some courts "reason that if the adjudication of individual declaratory or injunctive relief, in combination with stare decisis, collateral estoppel and the good faith of the loser, will as a practical matter produce the same result as formal class-wide relief, then the court should not be burdened with the potential complexities of a class suit"). Accordingly we deny certification of the two defendant classes, and grant O'Grady's and Margolis' motions to dismiss.

## IV. City Defendants' Motion to Dismiss

### A. Claims for Equitable Relief

■ The City defendants have first moved to dismiss Kohn's claim for injunctive relief on the ground that Kohn lacks standing to seek relief restraining the City from towing and disposing vehicles pursuant to the challenged sections of the Illinois Vehicle Code. The City defendants rely on *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), in which the Supreme Court held that equitable relief is available only where the plaintiff who has suffered a prior injury has shown that there is a "real or immediate threat that the plaintiff will be wronged again in a similar way...." *Id.* at 111, 103 S.Ct. at 1670; a speculative claim of future injury is insufficient. *See also Robinson v. Chicago*, 868 F.2d 959, 967 (7th Cir.1989) (former arrestees lacked standing to seek eq-

uitable relief because it was not reasonably likely that they would be arrested again); *Palmer v. Chicago*, 755 F.2d 560, 572 (7th Cir.1989) (convicted felons lacked standing to seek an injunction against defendants' practice of withholding exculpatory evidence because of unlikelihood that they would be wronged again). Kohn has failed to satisfy this requirement, as he has not produced evidence, or even alleged, that there is a sufficient likelihood that he will be wronged again. Accordingly, we dismiss all of his claims for injunctive relief.

### B. Individual and Official Capacity Claims

■ The City defendants next contend that Kohn has failed to state individual capacity claims against Martin and Mucia. Both Kohn and the City defendants rely on *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir.1986). *Rascon* dealt with the individual liability of a supervisory official in a section 1983 action. The court in *Rascon* stated that individual liability in section 1983 actions is based on personal responsibility. *Id.* at 273. The court also held that "[a]n official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Id.* at 274 (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985)). Martin and Mucia, by their approval and implementation of a policy of notification by first class mail of owners of impounded vehicles older than seven years, have not acted with deliberate or reckless disregard for Kohn's constitutional rights. They were simply following state law, which they were entitled to presume was constitutional. The requisite level of fault on the part of Mucia and Martin is missing. Therefore, we dismiss the individual capacity claims against them.

■ The City defendants also challenge Kohn's official capacity claims against Martin, Mucia, and Officer Collins, as being redundant. They contend that because the City of Chicago has been properly named

as a defendant, that it is not necessary to also pursue official capacity claims against these city employees. Official capacity suits are generally a way to plead an action against the organization which employs the official. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Since *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), however, local government units can be sued directly; there is no need to bring an official capacity action. As long as the government entity has notice and an opportunity to respond, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. The official capacity suits against Martin, Mucia, and Collins are thus redundant and unnecessary, because they are essentially suits against the city, which is already a named defendant. Accordingly, we dismiss the official capacity claims.

### C. The Constitutionality of Certain Municipal and State Statutes

The City moves to dismiss Kohn's Fourteenth Amendment challenge of vagueness and overbreadth to sections 27–200 and 27–372 of the Municipal Code of Chicago. In his responsive memorandum Kohn has not raised any objection to the motion to dismiss the challenge to these sections, and therefore the motion to dismiss may be granted for that reason alone.

 In any event, we also find that the sections are not impermissibly vague. Section 27–200 defines abandoned vehicles, and section 27–372 prohibits the abandonment of motor vehicles. Laws are impermissibly vague if they are vague in all their applications. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, *reh. denied*, 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982). In ruling on an identical challenge to the two sections, Judge Hart of this district has concluded:

> [I]t is clear that the definitions are not vague under all applications. The "not been moved or used for seven days" por-

tion of the definition is an objective and clear cut definition. The "apparently deserted" element of that definition, if not already clear, is made clear by attaching seven-day notice stickers to cars that are believed abandoned, which General Order 83–12 [of the Police Department] provides for. *See Tedeschi v. Blackwood*, 410 F.Supp. 34, 45 n. 15 (D.Conn.1976) (cited in *Miller v. City of Chicago*, 774 F.2d 188, 192–93 (7th Cir. 1985), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986)).

*Panter v. City of Chicago* No. 86 C 7187, slip op. at 5, 1988 WL 2793 (N.D.Ill.1988). Based on this reasoning, Judge Hart found that sections 27–200 and 27–372 were constitutional. We agree with Judge Hart's reasons for finding that these provisions are not impermissibly vague in all of their applications. Accordingly, we grant the City's motion to dismiss on this issue.

The City also moves to dismiss Kohn's Fourteenth Amendment challenges to sections 4–201 through 4–208, and 4–210 through 4–214 of the Illinois Motor Vehicle Code, for failure to state a claim. The City generally alleges their constitutionality and sound basis in policy. Kohn's response to the motion to dismiss concentrated solely on the notice provision of section 4–209(b). Kohn has not objected to the motion to dismiss these other provisions of the code. By not responding to the City's motion to dismiss as to these provisions, Kohn has waived the claims. Therefore, we grant the City's motion to dismiss the Fourteenth Amendment challenges to sections 4–201 through 4–208, and 4–210 through 4–214 of the Illinois Motor Vehicle Code.

### D. Claims Under the Fourth Amendment

 Kohn additionally has raised a Fourth Amendment challenge to Ill.Rev. Stat. ch. 95½ §§ 4–201 through 4–214, and sections 27–360 and 27–362 of the Municipal Code of Chicago. Here again, however, Kohn has failed to object or otherwise respond to the defendants' motion to dismiss this claim. Moreover, we also agree with the defendants that the concerns of the Fourth Amendment are not applicable here. The Fourth Amendment protects citizens

from unreasonable searches and seizures, especially in the context of a criminal investigation. *See e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment is concerned with insuring that evidence is seized only with probable cause and that people's privacy is not invaded arbitrarily. *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). Kohn's car was not to be used for evidence, nor was his privacy invaded in the context of a criminal investigation. Therefore we dismiss Kohn's complaint insofar as it purports to present a Fourth Amendment claim.

### E. Constitutionality of Post–tow Notice by Regular Mail

We now turn to the claim that is at the heart of this suit—Kohn's due process claim for damages arising from the alleged inadequacy of the notice afforded him under section 4–209(b) of the Illinois Vehicle Code. The City has moved to dismiss for failure to state a claim, and Kohn has responded with a motion for partial summary judgment on the issue of the constitutional sufficiency of section 4–209(b),[6] and the City's policy of following that statute with regard to the disposition of impounded cars.[7]

Kohn contends that section 4–209(b) violates due process because it authorizes only first class mail notice, instead of certified mail notice, to owners of impounded vehicles older than seven years, prior to the disposal of the vehicles.[8] A person's car is property, which cannot be taken from him without due process of the law. *Sutton v. Milwaukee,* 672 F.2d 644 (7th Cir.1982). In support of their respective positions, the parties agree that *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), provides the controlling test for deciding what additional procedural safeguards are necessary before the government can deprive someone of property. The *Mathews* test requires a court to account for three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

Although *Mathews* involved social security benefits, this test is applicable to the towing of vehicles as well. *Sutton,* 672 F.2d at 645–46 (no notice required before towing illegally parked cars, even though the illegally parked cars did not create an emergency situation).

Were we to mathematically express the *Mathews* test in the instant case, using the formula of Judge Posner in *Sutton,* 672 F.2d at 645–46, we would say that notice by certified mail is only required if the average value of a car older than seven years, times the probability of erroneous deprivation using first class mail, is greater than the increased costs of certified mail. Of course, as will be seen, the task of assigning actual numbers to this formula is not as fluid an exercise as devising the formula for two primary reasons. The first is the difficulty in finding out what would be considered objectively ascertainable valua-

---

**6.** Section 4–209(b) provides for post-tow notice and disposal of *abandoned* vehicles. Although there is a factual dispute as to whether Kohn's vehicle was towed as abandoned or as a hazard, this disputed fact is not material. Deposition evidence showed that the police vehicle pound followed the procedure in section 4–209(b) regardless of the reason for the tow.

**7.** In his amended complaint, Kohn also challenged the provision and the City's policy as violating the equal protection clause. However, Kohn's briefs contend the issue is only one of

due process. For this reason, we will not analyze the statute in terms of the equal protection clause.

**8.** Section 4–209(b) provides, in pertinent part:

> When an abandoned vehicle of more than 7 years of age is impounded ... it will be kept in custody for a minimum of 10 days for the purpose of determining the identity of the registered owner and lienholder by the U.S. Mail, public service or in person for a determination of disposition...."

tions—i.e., what is the risk of a first class mail notice, properly addressed, being "lost in the mail" in the Chicago metropolitan area.[9] A second problem in filling in the blanks of the mathematical formula is the greater difficulty in assigning hard numbers to what must be regarded as a subjective valuation. This problem is highlighted by the somewhat sterile definition of the private interest at stake as only being the average value of a car older than seven years. Though the price of an automobile may reflect the what an automobile is worth to society in general, the valuation of the private interest affected requires us to account for more than simply the price of a car. With this in mind, we undertake the balancing of factors required by *Mathews*.

Regarding the first *Mathews* factor, the private interest to be protected in this case is not insubstantial. We are concerned here with automobiles that have been erroneously disposed of after towing, cars that by definition would at least be worth more to the owner than the cost of towing and whatever fine is imposed upon the owner in reclaiming the vehicle. In this case, the towing charge ranges from $100–125 depending on the weight of the automobile. Storage charges range from $5–15 per day. The fine for abandoned cars runs from $25–200. Further, in strict dollars and cents terms, although some older model cars may cost very little to replace, this is not true for all older cars. Kohn alleges a case in point by claiming that his car, a 1976 BMW, was worth more than three thousand dollars. This cost inquiry also has an additional and substantial subjective element. For some, the relative cost of replacement for an older car may be the same as for the owner of a more recent model. The owner of an older car may be financially less well to do than the owner of a newer car. Further, the permanent and erroneous deprivation of an automobile without adequate prior notice is likely to disrupt a person's life beyond simply the loss associated with the market value of the car. As the court in *Graff v. Nicholl*, 370 F.Supp. 974 (N.D.Ill.1974), observed, automobiles are not only costly, but are often indispensable to "day-to-day living in American society." Thus, in any particular case, the private interest at stake may be great.

The second *Mathews* factor requires us to assess the risk of erroneous deprivation and the probable value of additional or substitute safeguards. We agree that in general the risk of an erroneous deprivation is small, since it is not disputed that first class mail is generally reliable. On the other hand, we disagree with the City's contention that certified mail would provide no additional benefit over first class notice. According to the City, the return receipt adds no additional assurance that notice will be received; nor will it assist the City in proving that notice was sent out, because the City keeps a file copy of notice letters sent to owners as proof of mailing. If this were completely true, however, one might wonder why certified mail is used at all, and especially why certified mail is required as the means of pre-tow notice of abandoned cars in Illinois, *Graff*, 370 F.Supp. at 984, and for post-tow notice to owners of vehicles seven years old or newer. Ill.Rev.Stat. ch. 95½ § 4–209(b) (1990). The answer is fairly evident. Since certified mail must be signed for by the addressee, it insures that the addressee actually received the mail. Further, the return receipt or returned certified letter provides actual proof that notice was in fact mailed. The Police Department Auto Pound's current practice of retaining a copy of the notice letter when notice is mailed does not guarantee that a letter ever reached the owner, or even that it entered the U.S. mail.

The third and final *Mathews* factor to account for is the cost and burden to the government of the additional safeguards. First class postage is $.29, whereas certified mail, return receipt requested, costs $2.00 per letter. Where thousands of cars

---

9. My law clerk's informal inquiry to the main post office in downtown Chicago elicited the admittedly speculative response that one in ten or twenty thousand pieces of first class mail is misdelivered.

are involved the difference in total cost must be regarded as substantial. That difference, however, may be offset to the extent these costs either may be passed on to persons reclaiming their vehicles or may be recouped from the proceeds of the sale of unclaimed vehicles for scrap.[10] The amount may additionally be offset through enforcement of the fines that are available as punishment for vehicle abandonment. Further, the number of additional certified notices would be offset to a certain extent by those cases in which a person has already received pre-tow notice by registered or certified mail under the provisions for abandoned vehicles. (We see no reason why a second guaranteed notice need be sent where a person is already on notice as to what has happened to her car.) The number is further reduced by vehicles not properly registered or whose owners have failed to keep a current address on file with the Secretary of State. The added administrative burden to the City consists of filling out and attaching the return receipt to the envelope. Lt. Mucia, the police Auto Pound Officer, testified in a deposition that this process took five times as long as that for regular mail. However, because the regular mail procedure is a relatively slight administrative burden to begin with, particularly when compared to the amount of time invested in towing and storing the car, five times that slight burden would not appear to be substantial.

The result of the *Mathews* balancing in this case favors requiring certified mail notice, return receipt requested, for all towed cars prior to disposal, regardless of the cars' ages. Even old cars may be worth hundreds of dollars, and they are at least valuable for scrap. In addition to the replacement value of the car, there is the subjective value of the car to the owner to consider, the cost of looking for a replacement, and the cost of being without a car until a new one is bought. The added benefits of certified mail provide additional

assurance that people will not erroneously be deprived of their automobiles. As we have observed, the increase in administrative costs to the City and the additional $1.71 in mailing costs per car, are no doubt substantial when multiplied by the thousands of cars older than seven years which the City tows each year (reduced as we have indicated by the number of persons who received pre-tow notice). However, the additional costs do not outweigh the benefit obtained. If notice by registered or certified mail is required as a matter of due process for the essentially temporary deprivation that arises in the pre-tow context, *see Graff,* 370 F.Supp. 974, then such notice would appear to be of even greater importance when there is the potential for a permanent deprivation of property that arises in the pre-disposal context. Accordingly, we grant summary judgment in favor of Kohn on his adequacy of notice claim.

## F. Adequacy of Ten Day Waiting Period

Kohn also challenges the adequacy of what he alleges is only a ten day waiting period prior to disposal of a vehicle provided for in section 4–209(b). Kohn's challenge, however, is predicated on an incomplete reading of the statute. The ten-day period under the statute pertains to the minimum time for determining the identity of the registered owner of the vehicle and then contacting by the approved forms of notice. Section 4–209(b) then provides that "[a]t the end of the 10 day period, without the benefit of disposition information being received from the registered owner or lienholder, the law enforcement agency having jurisdiction will authorize the disposal of the vehicle as junk." Section 4–208(a) of the statute, however, provides for the retention of a vehicle before it is disposed of. That section requires an additional 15–day holding period before the disposition of an abandoned, lost, stolen or unclaimed ve-

---

**10.** Deposition evidence indicates that the City receives fifty dollars for each car sold for scrap. As an example of the magnitude of these sales, we note that the City provided in an answer to an interrogatory evidence that it raised over seven million dollars from the sale for destruction of unclaimed vehicles in the last three years. We are not, however, suggesting that the City is profiting on the destruction of older cars since it is highly probable that towing, storage, labor, and administration costs surpass this income.

hicle and only after notice has been sent. The City has provided evidence that this is the procedure that it follows. The concerns raised by Kohn as to sufficiency of the ten-day period are inapplicable when the additional fifteen days after notice are taken into account. Accordingly, we reject Kohn's time-based challenge on summary judgment.

### Conclusion

In light of the foregoing, we hold as follows:

(1) Class certification of two plaintiff classes and two defendant classes is denied;

(2) The Director of the Illinois Police Department, Jeremy Margolis', motion to dismiss for lack of subject matter jurisdiction is granted;

(3) The Sheriff of Cook County, James O'Grady's, motion to dismiss for lack of subject matter jurisdiction is granted;

(4) The City defendants' motion to dismiss individual capacity suits against Martin and Mucia, and official capacity suits against Martin, Mucia, and Collins are granted;

(5) The City defendants' motion to dismiss all claims for injunctive relief, all claims under the fourth amendment, and the vagueness and overbreadth challenges to sections 27–200 and 27–372 of the Municipal Code of Chicago is granted;

(6) The City defendants' motion to dismiss Kohn's claims that sections 4–201 through 4–214 of the Illinois Motor Vehicle Code are unconstitutional is granted, except with respect to section 4–209(b);

(7) Kohn's motion for partial summary judgment as to [Counts I and III], with respect to the sufficiency of the first class mail notice procedure in section 4–209(b) of the Illinois Motor Vehicle Code, is granted; with respect to the sufficiency of the ten-day waiting period, summary judgment is denied.

The City is directed to answer what remains of Kohn's complaint within ten days. We reset the status hearing in this matter to June 14, 1991. In the interim we expect the parties to have met regarding any possible settlement of this matter and, barring an agreement as to settlement, to establish a plan concerning how this matter is to proceed. The results of these discussions should be reported to this Court at the status hearing. It is so ordered.