### Linda McGEE, Plaintiff,

v.

### EAST OHIO GAS COMPANY, Defendant.

### No. 99–CV–813.

United States District Court,
S.D. Ohio,
Eastern Division.

May 23, 2001.

---

Kimberly M. Skaggs, Equal Justice Foundation, Columbus, OH, Gary Michael Smith, Graham McClelland Ransbottom, Dover, OH, for Linda McGee and Tammy D. Goodwin.

David A. Kutik, Michael L. Snyder, Jones, Day, Reavis & Pogue, Cleveland, OH, for East Ohio Gas Co.

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Class Certification, filed pursuant to Federal Rule of Civil Procedure 23 on August 24, 1999.[1] Plaintiff seeks to certify a class defined as:

All persons since August 12, 1997 who were or will be "applicants" for gas service from defendant, as that term is defined in the ECOA, who do or can individually satisfy the credit standards R.C. § 4933.17 permits East Ohio to employ as to those who seek to obtain or maintain residential gas service.

For the following reasons, the Court **GRANTS** Plaintiff's Motion for Class Certification under Rule 23(b)(2), and **DENIES** Plaintiff's Motion for Class Certification with respect to the damages class sought under Rule 23(b)(3). The (b)(2) class the Court certifies in this Order is circumscribed by a slightly more refined definition than that suggested by Plaintiff:

All persons who are or will be "applicants," as that term is defined in the Equal Credit Opportunity Act, for gas service from the East Ohio Gas Company, who do or can individually satisfy the credit standards that Ohio Revised Code section 4933.17 permits East Ohio to employ with respect to those who seek to obtain or maintain residential gas service.

## II. CAUSES OF ACTION ASSERTED

Ms. McGee alleges that, in conditioning the continuance of her account and her credit upon payment of a debt owed by her husband, East Ohio Gas Company ("East Ohio") violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"),[2] and Ohio Revised Code section 4112.021.[3] Plaintiff further contends that Defendant's action

---

1. Defendant filed its response on December 22, 2000, and Plaintiff her reply on January 31, 2001.

2. Section 1691(a)(1) provides: "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of ... marital status...." 15 U.S.C. § 1691(a)(1). Pursuant to § 1691b(a)(1), the Federal Reserve Board has prescribed regulations to carry out this dictate. One such regulation provides: "A creditor shall not refuse to grant an individual account to a creditworthy applicant on the basis of ... marital status...." 12 C.F.R. § 202.7(a). Another states: "a creditor shall not require the signature of an applicant's spouse ..., other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of

creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1).

3. The Ohio Revised Code provides:

(B) It shall be an unlawful discriminatory practice:
(1) For any creditor to do any of the following:
(a) Discriminate against any applicant for credit in the granting, withholding, extending, or renewing of credit, or in the fixing of the rates, terms, or conditions of any form of credit, on the basis of ... marital status ...
(h) Fail or refuse on the basis of ... marital status ... to maintain, upon the request of the individual, a separate account for each individual to whom credit is extended....

Ohio Rev.Code § 4112.021.

amounted to a breach of its public duty to serve.[4]

With respect to class certification, Ms. McGee seeks to represent herself and other similarly-situated, credit-worthy applicants. Plaintiff asserts that East Ohio "regularly denies service based on unpaid bills from non-applicants, routinely denies individual accounts to new applicants, and uniformly transfers past balances from non-applicants to the accounts of new applicants." She claims that the underlying legal issue for the Court to consider in this case—whether Defendant's policies and conduct violate the ECOA and state law—is common to all members of the purported class.[5] She, therefore, argues that the purported class should be certified under Rule 23(b)(2) and/or 23(b)(3).

East Ohio counters that there is no direct evidence before the Court that the gas company has ever made a single credit decision *because of* marital status. Its agents testified that Joseph McGee's arrearage was added to Ms. McGee's account due to a misapprehension or misapplication of Ohio Revised Code section 4933.12(B).[6] Defendant points out that while such an erroneous transfer, which it attributes to Joseph McGee living with Linda McGee, *not* to their marital relationship, may well be violative of Ohio Revised Code section 4933.12(B),[7] it is not forbidden by the ECOA or Ohio Revised Code section 4112.02, and thus is not likely indicative of widespread violation of those statutes by East Ohio. Therefore, Defendant argues, it would be inappropriate to certify Plaintiff's putative class.

## III. FACTS

Joseph McGee, Plaintiff's husband, requested and received gas service from East Ohio Gas Company at 355 Guilford Avenue in Wooster, Ohio for a period ending in March of 1993. Joseph McGee owed East Ohio $314.98 when he discontinued his service at the Guilford Avenue address.

From May 1997 until December 1997, Linda McGee received gas service from East Ohio at 447½ Spink Road in Wooster, Ohio. When she discontinued her gas service, Ms. McGee owed East Ohio $206.18, which remains unpaid.

From June 30, 1998 until July 1, 1999, Joseph and Linda McGee received, pursuant to an account in Linda's name, gas service at 283 East Wood Street in Shreve, Ohio. When service was discontinued, Ms. McGee owed East Ohio $108.99, which has not been paid.

In July of 1999, Linda and Joseph McGee moved into a house at 114½ Maple Avenue. Ms. McGee requested and, after submitting a security deposit, received gas service for the new residence. On his first service visit to the McGees' residence, Clarence Richard Kuhn, an East Ohio representative, installed a meter and, while there, informed Joseph McGee that both the furnace and the water heater should be taken apart and cleaned. Joseph McGee then signed the Customer Meter / Service Order on the "Customer's Signature" line. Mr. Kuhn subsequently returned to the Maple Avenue address several times to service faulty pilot lights. Mr. Kuhn was often admitted to the home by Joseph McGee, and came to suspect that Joseph McGee lived there. Mr. Kuhn also recognized Joseph McGee as someone who owed a past-due bill to East Ohio (Mr. Kuhn had visited Joseph McGee at the Guilford Avenue address in a collections capacity).

---

4. Plaintiff's claims brought pursuant to the Ohio Corrupt Practices Act, Ohio Revised Code section 2923.32, were dismissed by this Court's September 6, 2000 Order.

5. Likewise does Plaintiff's vision of the case make the primary question of fact-the nature of East Ohio's actual consolidation practices with respect to individual accounts of married persons—common to all putative class members.

6. Included in the Ohio statute dictating when a gas company may and may not withhold service is the following limitation and exception:

The company shall not refuse to furnish gas on account of arrearages due it for gas furnished to persons formerly receiving services at the premises as customers of the company, provided the former customers are not continuing to reside at such premises.
OHIO REV.CODE § 4933.12(B).

7. As the Court noted in its September 6, 2000 Opinion, "Plaintiff ... did not invoke Chapter 4905." *McGee v. East Ohio Gas Co.,* 111 F.Supp.2d 979, 985 (S.D.Ohio 2000).

Once this information was passed up the chain of command at East Ohio, Defendant reviewed its records and discovered that Joseph McGee indeed had an arrearage of $314.98 from the Guilford Avenue account. Joseph McGee's account balance from Guilford Avenue was then transferred to Linda McGee's Maple Avenue account.

## IV. STANDARD OF REVIEW

Before delving into a Rule 23 analysis, the district court must first consider whether a precisely defined class exists and whether the named plaintiff is a member of the proposed class. *See East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (discussing membership in a proposed class); *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009 (W.D.Mich.1987). While class definitions are obviously individualized to the given case, important elements of defining a class include: (1) specifying a particular group at a particular time and location who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner. *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir.1986) (holding that a class could not be certified because the definition "ma[de] class members impossible to identify prior to individualized fact-finding and litigation," thereby failing "to satisfy one of the basic requirements under Rule 23"). *Cf. Rodriguez*, 672 F.Supp. at 1012 (finding that the plaintiffs met the requirement for defining a class because the definition specified a group of agricultural laborers "during a specific time frame and at a specific location who were harmed in a specific way . . . .") (citations omitted).

If the putative class is adequately defined, the court need then engage in "rigorous analysis" of the plaintiff's ability to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The district court must carefully consider whether the requirements of Rule 23 are satisfied prior to certifying a class. *Shipp v. Memphis Area Office, Tenn. Dep't of Employ-*

*ment*, 581 F.2d 1167 (6th Cir.1978); *Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.1976). The party that moves for class certification has the burden of proof under Rule 23. *See Senter*, 532 F.2d at 520 (finding that "[a] plaintiff must show that the action satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.").

The plaintiff "must satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class he seeks to represent falls within one of the subcategories of Rule 23(b)." *Id.* at 522. The court must not inquire, however, into the merits of the underlying claims of the class representative. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The court should accept as true the plaintiff's allegations in the complaint. *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579 (S.D.Ohio 1993). Resolution of the class certification issue may, however, require the court "to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364. Though "[i]n ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings," *Senter*, 532 F.2d at 523, the plaintiff may not rely on pure speculation to satisfy Rule 23's requirements. *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 497 (N.D.Ill. 1999).

Even after certification, the district court may decertify a class if there is a subsequent showing that the grounds for granting certification no longer exist or never existed. *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364.

## V. ANALYSIS

In this case, the required rigorous analysis includes examination of: (1) the proposed definition of the class; (2) the prerequisites of Rule 23(a); and (3) the requirements of Rule 23(b)(2) and/or 23(b)(3). Defendant here challenges Plaintiff's capability to properly define her purported class, her ability to

satisfy any of the Rule 23(a) prerequisites, and her capacity to fulfill the additional requirements of Rule 23(b)(2) and/or (b)(3).

## A. Definition of the Class

■ Here, Plaintiff asks the Court to certify the class comprised of:

> All persons since August 12, 1997 who were or will be "applicants" for gas service from defendant, as that term is defined in the ECOA,[8] who do or can individually satisfy the credit standards R.C. § 4933.17 permits East Ohio to employ as to those who seek to obtain or maintain residential gas service.

Defendant challenges the sufficiency of this proposed class definition on three grounds. First, Defendant claims that Plaintiff's proposed definition should fail because it is over-broad in that it includes persons who have not been, and will not be, harmed by Defendant. Second, Defendant asserts that an "open class," which may grow in size in the future, cannot be certified. Third, Defendant argues that membership in the putative class could not readily be determined.

Courts often have grappled with the problem of concisely defining a class. Common class certification issues include evaluating proposed classes that are ill-defined or too broad. The putative class in the matter *sub judice* is reasonably well-defined,[9] if slightly over-broad.

The Court finds Defendant's first argument-that Plaintiff's putative class would include members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm in the future-to be well taken. Since the proposed definition includes "[a]ll persons since August 12, 1997 who were ... 'applicants' for gas service from [D]efendant," it fails to exclude those persons who were East Ohio "applicants" in the late 1990s, but suffered no harm due to Defendant's allegedly illegal consolidation policies and practices, and have now either moved away from East Ohio's coverage area or have ceased using East Ohio gas. These persons are not at risk to be harmed by East Ohio in the future, at least so long as they remain disassociated from Defendant.[10] This failing, however, is corrected simply by changing the "were" in Plaintiff's proposed class definition to "are."

■ The Court finds Defendant's second argument—that an "open class" cannot be certified—to be specious. Courts regularly certify classes that include prospective applicants, employees, consumers and/or victims. *See, e.g., Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir.1974) (holding that a class of only thirty-five identified members satisfied the numerosity requirement of Rule 23(a) where the class was described as including prospective employees). Where the interests of the present and future claim-holders are aligned-as, with respect to the injunctive relief sought, they are here-it is appropriate to certify the class without division into subclasses. *See* Fed. R.Civ.P. 23(c)(4)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 819, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

The Court likewise finds Defendant's third attack on the definition of the (b)(2) class—that membership in the putative class could not readily be determined—to be without merit. Credit-worthy "applicants" are in the class, all other individuals are not; this is a simple formulation. With respect to Plaintiff's proposed (b)(3) damages class, Defen-

---

8. The ECOA defines the term "applicant" to mean: "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

9. Plaintiff correctly notes, with respect to her proposed class definition:
   [W]hether a particular individual is a member of the [purported] class can be objectively determined by reference to three factors, all of which can be gleaned from [D]efendant's account records: (1) did this person apply for or receive a residential account from East Ohio; (2) after August 12, 1997; (3) and pay, offer to pay or stand exempt from the deposit requirement that establishes creditworthiness as a matter of law under R.C. § 4933.17?

10. The former East Ohio customers who are also future East Ohio "applicants" are included in the class, as they should be, by way of the "or will be" clause in the definition.

dant's argument has considerably more appeal. As discussed in Part V.C.2, *infra*, the Court declines to certify a (b)(3) class at this time, in part because determining membership in the class would involve extensive individual fact-finding.

In response to Defendant's argument that Plaintiff's proposed class definition is overbroad, and to clarify the definition slightly, the Court will perform the required Rule 23 evaluation of the following putative class:

> All persons who are or will be "applicants," as that term is defined in the Equal Credit Opportunity Act, for gas service from the East Ohio Gas Company, who do or can individually satisfy the credit standards that Ohio Revised Code section 4933.17 permits East Ohio to employ with respect to those who seek to obtain or maintain residential gas service.

### B. Rule 23(a) Requirements

As the Court has found that the proposed class is adequately defined, it must next consider whether the putative class can be certified pursuant to the Rule 23 prerequisites to maintaining a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a). Thus, there are four requirements that must be satisfied before a class is certified: (1) numerosity, (2) commonality, (3) typicality and (4) fair and adequate representation. *See id.* Each of these prerequisites must be met before a class can be certified. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

### 1. Numerosity

The element of numerosity requires that the class be "so numerous that joinder of all members is impracticable." FED R.CIV.P. 23(a)(1). Determining the impracticability of joinder does not require adherence to a strict numerical formula. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (finding that "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). In judging numerosity, the court may consider the diverse geographic distribution of members in the putative class, as well as their actual number. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir.1986); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981); *see also Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131–32 (1st Cir.1985) (noting that "[j]oinder is considered more practicable when all members of the class are from the same geographic area.") (citations omitted). In general, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). While "[t]he exact number of class members need not be pleaded or proved, ... impracticality of joinder must be positively shown, and cannot be speculative." *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 496 (N.D.Ill.1999) (citing *Gomez v. Comerford*, 833 F.Supp. 702, 706 (N.D.Ill.1993); *Kohn v. Mucia*, 776 F.Supp. 348, 352 (N.D.Ill.1991)).

Defendant here argues that Plaintiff has produced no evidence to support the assertion that any individual apart from Plaintiff herself has been harmed by East Ohio through an allegedly improper account consolidation. With respect to Plaintiff's proposed (b)(3) damages class, East Ohio's argument is persuasive. Plaintiff's contemplated (b)(2) class, however, seeks not to recover monetary damages, but rather to halt an allegedly illegal policy and/or practice to which all East Ohio "applicants" are subject.[11] Juanita Watkins, Supervisor of Cus-

---

11. Conceivably, any East Ohio credit "applicant" could marry an individual in debt to East Ohio; thus, all current and future East Ohio credit

"applicants" are at risk of being harmed by East Ohio's impermissible consolidation policy, should the finder of fact conclude that such a

tomer Credit for East Ohio, stated in her affidavit that "East Ohio provides natural gas service to approximately 1.2 million customers in the State of Ohio." Given such a large number of customers, numerosity is clearly satisfied.

### 2. Commonality

██ The commonality prerequisite requires there to be questions of law or fact common to the class. FED.R.CIV.P. 23(a)(2). "The commonality test 'is qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class.'" *In re Am. Med. Sys.*, 75 F.3d at 1080 (quoting 1 HERBERT NEWBERG ET AL., NEWBERG ON CLASS ACTIONS § 3–10, at 3–50 (3d ed.1992)). As this Court has held previously, commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D.Ohio 1992) (quotation omitted).

Whether Defendant's policies and/or practices violate the ECOA and/or state law is clearly a question common to Plaintiff's (b)(2) class. In fact, exactly what Defendant's consolidation policies and practices are is essentially the *only* factual question that needs to be answered in this class action, and whether those policies and/or practices are illegal is essentially the only legal question. Commonality is satisfied.

### 3. Typicality

██ A plaintiff seeking to represent a class must present claims typical of that class. FED.R.CIV.P. 23(a)(3). The Sixth Circuit has recently provided an explanation for the method of analysis necessary to evaluate typicality in a given case: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998). That is:

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may prop-

erly attribute a collective nature to the challenged conduct.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members."

*Id.* (quoting *Am. Med. Sys.*, 75 F.3d at 1082).

Here, by pursuing her own claims, Plaintiff will also advance the interests and the claims of the absent members of the (b)(2) class. Plaintiff maintains exactly the same causes of action on her own behalf as she does on behalf of the putative class. The proofs that are required for her own case to prevail are those necessary for the putative class to prevail. That is, all interests are advanced by proving that Defendant has a policy and/or practice of violating the ECOA and/or state law by impermissibly consolidating accounts of married couples based upon their marital status. Thus, Plaintiff has satisfied the typicality requirements.

### 4. Fair and Adequate Representation

██ In a class action, the representative plaintiff must "fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with the unnamed members of the class, and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525; *see also Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977) (noting that "[i]n making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). Furthermore, the representative must be a member of the class she purports to represent. *East Texas Motor Freight Sys., Inc.*, 431 U.S. at 403, 97 S.Ct. 1891.

---

policy exists. This Court has already found that Plaintiff has made a strong enough showing of

the existence of such a policy to stave off summary judgment. *McGee*, 111 F. Supp.2d at 984.

Defendant here does not challenge the adequacy of Plaintiff's counsel,[12] but does seek to paint Plaintiff herself as an uninterested putative class representative who has too many individual issues with which to be concerned to advance adequately the interests of the putative class. Plaintiff responds that her interests are aligned precisely with those of the putative (b)(2) class, and are in no way hostile to them. Plaintiff also notes that she is "interested enough in the case to [have] prepare[d] for and endure[d] the stress and anxiety of being deposed for several hours."

This Court finds that Linda McGee is a member of the proposed (b)(2) class, has all relevant interests in common with the putative class, and is in no way antagonistic toward the interests of that class. As Defendant concedes that Plaintiff's counsel is qualified and will vigorously prosecute the interests of the class, the Court finds that the "fair and adequate representation" prong of Rule 23(a) is satisfied.

### C. Rule 23(b) Requirements

Because the Court has found Plaintiff's putative class to be adequately defined and to have fulfilled the prerequisites of Rule 23(a), it must now determine whether the proposed class satisfies the additional requirements of Rule 23(b)(2) and/or 23(b)(3).

#### 1. Rule 23(b)(2) Requirements

■ Rule 23(b)(2) permits class certification where the requirements of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" FED.R.CIV.P. 23(b)(2). The Advisory Committee's Notes to the 1966 amendment of Rule 23 explain that subsection (b)(2)

> is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the

legality of the behavior with respect to the class as a whole, is appropriate.... Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

FED.R.CIV.P. 23 advisory committee's note.

It is hard to imagine a proposed class more appropriate for (b)(2) certification than the one presently before the Court. East Ohio is charged with having a policy and/or practice of violating the ECOA and Ohio law by discriminating against credit applicants on the basis of their marital status. The putative class petitions for this Court to command East Ohio to cease doing so. Effectively, the putative class seeks a judgment "settling the legality of the behavior with respect to the class as a whole." *Id.* That Linda McGee may be the only member of the class actually to have suffered an allegedly illegal consolidation is of no moment here, "provided it [was] based on grounds which have general application to the class." *Id.*

The Court finds that the putative class satisfies the requirements of Rule 23(b)(2), and therefore **CERTIFIES** the class defined as:

> All persons who are or will be "applicants," as that term is defined in the Equal Credit Opportunity Act, for gas service from the East Ohio Gas Company, who do or can individually satisfy the credit standards that Ohio Revised Code section 4933.17 permits East Ohio to employ with respect to those who seek to obtain or maintain residential gas service.

#### 2. Rule 23(b)(3) Requirements

■ Rule 23(b)(3) permits class certification where the requirements of Rule 23(a) are met and

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class

---

12. This Court has had extensive experience with The Equal Justice Foundation, and finds Defendant's concession on this point entirely proper.

action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED R.CIV.P. 23(b)(2).

Though Plaintiff originally sought to have her entire putative class certified for damages purposes under Rule 23(b)(3), Plaintiff's counsel conceded at oral argument that the definition proposed would be drastically overbroad in such a context. He suggested instead that a subclass under Rule 23(c)(4)(B) would be appropriate. Presumably, the subclass would include only those individuals who have had their accounts improperly consolidated because of their marital status.

The Court declines to certify such a subclass. First, no matter how well the subclass were defined, determining membership in the subclass would require intensive individual fact finding with respect to the causation of each putative class member's challenged consolidation. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 & 405 (E.D.Pa. 1995) (denying class certification because the plaintiff's definition of the class would require a mini-hearing on the merits of each plaintiff's claim and liability would be determined by facts specific to each plaintiff). Second, based upon the record before the Court at this point,[13] it appears that such a subclass may well count Linda McGee as its only member. Plaintiff thus cannot satisfy the numerosity requirement of Rule 23(a) without improperly relying on pure speculation. *Cwiak*, 186 F.R.D. at 496; *see also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1033 (6th Cir.1992) (declining to accept the plaintiff's "conclusory allegations" that numerous consumers were wronged in the same manner as the plaintiff simply because the letters the plaintiff received were computer generated). Finally, the Court finds that neither the predominance requirement nor the superiority requirement of Rule 23(b)(3) would be satisfied in this case, as the common issues of fact and law would be limited to the existence and legality of East

Ohio's policies and/or practices, while the individual aspects of both claims and defenses would be legion.[14] The Court therefore **DENIES** Plaintiff's Motion for Class Certification with respect to the damages class sought under Rule 23(b)(3).

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Class Certification under Rule 23(b)(2), and **DENIES** Plaintiff's Motion for Class Certification with respect to the damages class sought under Rule 23(b)(3). The (b)(2) class certified is defined as follows:

> All persons who are or will be "applicants," as that term is defined in the Equal Credit Opportunity Act, for gas service from the East Ohio Gas Company, who do or can individually satisfy the credit standards that Ohio Revised Code section 4933.17 permits East Ohio to employ with respect to those who seek to obtain or maintain residential gas service.

**IT IS SO ORDERED.**

---

13. The Court here notes that oral argument on the class certification issue was held one week before the discovery deadline in this case.

14. Were East Ohio's consolidation policies and/or practices found to be violative of the

ECOA and/or state law in this (b)(2) class action, presumably, individual plaintiffs later pressing damages claims could rely on the collateral estoppel doctrine to avoid having to relitigate such issues.