**J.N.S., INC., Plaintiff-Appellant,**

v.

**STATE OF INDIANA, Lindley Pearson, as Attorney General of the State of Indiana, et al., Defendants-Appellees.**

No. 82–2879.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1983.
Decided July 15, 1983.

**304**

Richard Kammen, McClure & Kammen, Indianapolis, Ind., for plaintiff-appellant.

George B. Huff, Jr., Office of Atty. Gen. of Ind., Indianapolis, Ind., for defendants-appellees.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.[*]

ESCHBACH, Circuit Judge.

J.N.S., Inc. ("J.N.S.") appeals from the district court's dismissal of its complaint for lack of standing. J.N.S. had sought to challenge the constitutionality of the Indiana civil anti-racketeering statute and the district court held that J.N.S. had not suffered sufficient actual or threatened injury to present a "case or controversy." For the reasons below, we affirm.

**I**

J.N.S. describes itself as a business engaged in the distribution of sexually explicit materials protected by the First Amendment. On two occasions, once in January 1979 and once in November 1981, officers of the Indianapolis Police Department executed search warrants at the premises of J.N.S. in an attempt to obtain evidence of violation of I.C. 35–30–10.1–2, importation or distribution of obscene matter. Obscenity charges were filed and then dismissed on the first occasion. At the time J.N.S. brought the instant action, obscenity charges resulting from the second search were pending.

In 1980, Indiana enacted statutes aimed at racketeer influenced and corrupt organizations. The criminal "RICO" provisions, I.C. 35–45–6–1 and 2, make it a Class C felony to acquire or maintain an interest in an enterprise or real property through a pattern of racketeering or to conduct the activities of an enterprise through a pattern of racketeering. The civil provisions, I.C. 34–4–30.5–1 through 6, provide that if a court finds by a preponderance of the evidence that there has been a violation of I.C. 35–45–6–1, the court may impose a variety of sanctions, including forfeiture of any property used in the course of, intended for use in the course of, derived from or realized through the prohibited conduct. A pattern of racketeering is defined as "engaging in at least two [2] incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents...." I.C. 35–45–6–1(c). The incidents must have occurred within five years of each other, and one of the incidents must have occurred after August 31, 1980. *Id.* A racketeering activity means "to commit, to attempt to commit, or to conspire to commit a violation, or aiding and abetting in a violation" of any of several Indiana laws, including I.C. 35–30–10.1–2, importation or distribution of obscene matter. I.C. 35–45–6–1(d).

In February 1982, J.N.S. brought this action against the state of Indiana and several law enforcement officials seeking a declaratory judgment that I.C. 34–4–30.5–1 through 6, the Indiana civil RICO provisions, are violative of First Amendment rights and asking that the defendants be enjoined from enforcing those provisions as to materials not specifically found to be obscene. The defendants moved to dismiss on several grounds, including failure to allege a justiciable case or controversy. The district court found that while J.N.S. had faced obscenity charges, it had never been prosecuted or threatened with proceedings under the RICO statutes. The court concluded that J.N.S. had not presented a case

* The Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

or controversy as required by Article III of the Constitution and held that the court lacked jurisdiction to decide the matter. J.N.S. appeals from the district court's dismissal of its complaint.

## II.

J.N.S. raises one issue on appeal—whether it was sufficiently aggrieved by the Indiana civil RICO provisions to satisfy the "case or controversy" requirement of Article III of the Constitution. The appellees ask this court to award damages, costs and attorney's fees to them, contending that J.N.S. clearly lacked standing to press its claim and that its appeal is frivolous.

## III

■ Article III of the Constitution limits the exercise of judicial power to "cases" and "controversies," *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and federal courts established pursuant to Article III do not render advisory opinions, *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). The case or controversy jurisdictional requirement applies to actions for declaratory judgments with equal force as it does to actions seeking traditional coercive relief. *See Golden v. Zwickler, supra,* 394 U.S. at 108, 89 S.Ct. at 959; *United Public Workers v. Mitchell, supra,* 330 U.S. at 89, 67 S.Ct. at 564; *Aetna Life Insurance Co. v. Haworth, supra,* 300 U.S. at 239–40, 57 S.Ct. at 463. Whether a plaintiff has presented a case or controversy within the meaning of Article III or simply an abstract legal question is not discernible by any precise test, *see Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); *Poe v. Ullman,* 367 U.S. 497, 508–09, 81 S.Ct. 1752, 1758–59, 6 L.Ed.2d 989 (1961), but certain well-established principles provide guidance.

■ The power of a federal court to pass upon the constitutionality of a statute can be exercised only if the interests of the litigants require the use of this judicial authority for protection against actual interference with their rights. *See Golden v. Zwickler,* 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell,* 330 U.S. 75, 89–90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). A litigant must demonstrate an injury which is "real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative." *Myron v. Chicoine,* 678 F.2d 727, 730 (7th Cir.1982); *see also Babbitt v. United Farm Workers National Union, supra,* 442 U.S. at 298, 99 S.Ct. at 2308. It is insufficient that an actual controversy may occur in the future; it must presently exist in fact. *See Urantia Foundation v. Commissioner,* 684 F.2d 521, 525 (7th Cir.1982). While the necessity of an actual controversy does not require that a litigant be the subject of some administrative or judicial proceeding before suit is brought, *see Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497, 500 (7th Cir. 1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981), a litigant must establish a more immediate threat than simply a general policy of enforcing laws, *see Poe v. Ullman,* 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961), *National Student Association v. Hershey,* 412 F.2d 1103, 1115 (D.C.Cir.1969). And while a litigant alleging that a statute has a chilling effect on First Amendment rights may more readily state a justiciable claim than if First Amendment rights were not involved, *see id.* at 1113, even a constitutional question involving the First Amendment must be presented in the context of a specific live grievance, *Golden v. Zwickler, supra,* 394 U.S. at 110, 89 S.Ct. at 960.

In its complaint, J.N.S. alleged the existence of the Indiana civil RICO statute and the general responsibility of the defendants to enforce Indiana laws. In later documents, J.N.S. asserted that it had twice been charged with violations of the Indiana obscenity law, but admits that it has never been prosecuted or even threatened with

proceedings under either the criminal or civil RICO statutes. Indeed, it is unclear whether either statute could be applied to J.N.S. at present. While our research discloses no Indiana cases construing the requirement of two "violations," at oral argument, a deputy attorney general opined that J.N.S. would have to accumulate two obscenity *convictions* before the state RICO statutes would apply. Under the federal RICO statute, conviction of the underlying offenses is not required. *See e.g. United States v. Malatesta,* 583 F.2d 748, 757 (5th Cir.1978), *reheard en banc,* 590 F.2d 1379 (1979), *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979) (conviction of underlying state crime not required); *cf. United States v. Starnes,* 644 F.2d 673, 678 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981) (acts in violation of state arson statute and federal mail fraud statute supported federal RICO conviction, although there was no indication of conviction under either underlying statute). But even though the Indiana RICO statutes appear to be patterned to some degree on the federal statute, Indiana courts may choose to put a different gloss on the "violation" requirement. The uncertainty of whether the Indiana RICO statutes could presently be applied to J.N.S. underscores the speculative nature of its claim at this point.

Whether couched in terms of standing (the party bringing the suit) or ripeness (the timing of the suit), it is clear that *this plaintiff* does not have sufficient stake in the outcome of this action *at this time* to satisfy the case or controversy requirement of Article III. "A federal lawsuit to stop a prosecution in a state court is a serious matter. And persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases." *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). Not every chilling effect on protected expression caused by a general possibility of enforcement creates a justiciable controversy. *National Student Association v. Hershey, supra,* 412 F.2d at 1115. In the words

of the district court, it is "painfully clear" that J.N.S. has suffered no actual or threatened harm by way of the challenged statute sufficient to support jurisdiction.

While we affirm the district court's dismissal of this action, we do not find that this appeal was frivolous or taken in bad faith. We therefore award the appellees costs but deny their request for damages and attorney's fees.

### IV

The district court's dismissal of this action for lack of jurisdiction is affirmed. Costs are awarded to the appellees.