Richard DEVINE, State's Attorney
of Cook County, Illinois, et
al., Plaintiffs,

v.

Mary ROBINSON, not individually, but
in her official capacity as Administra-
tor of the Attorney Registration and
Disciplinary Commission of the Su-
preme Court of Illinois, Defendant.

No. 00–CV–4974.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 22, 2001.

Gerald Ernest Nora, Paul Anthony Castiglione, States Attorneys of Cook County, Chicago, IL, for plaintiff.

Marita Clare Sullivan, Susan Frederick Rhodes, Steven R. Splitt, Rosalyn B. Kaplan, Attorney Registration & Disciplinary Commission, Chicago, IL, for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

The plaintiffs filed this cause of action seeking an injunction to prevent the defendant from enforcing Rules 3.6 and 3.8 of the Illinois Rules of Professional Conduct on the basis that the rules infringe the plaintiffs' First Amendment rights to freedom of speech. Before the Court is the defendant's motion to dismiss the complaint. For the reasons explained below, the motion is granted.

### Facts

Plaintiffs are ten state prosecutors who argue that two recently amended ethical rules regarding trial publicity, Rules 3.6 and 3.8 of the Illinois Rules of Professional Conduct, unconstitutionally infringe the First Amendment because they chill speech and are vague and overbroad. The defendant, Mary Robinson, is the Administrator of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC") which has authority to investigate and prosecute attorneys for alleged professional misconduct.

Before discussing the content of the rules at issue and the arguments before the court, it will be helpful to review some of the history of ethical restraints on the extrajudicial speech of attorneys. In *Gentile v. State Bar of Nevada*, 501 U.S. 1030,

111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), the Court was asked to determine whether Nevada's prohibition on extrajudicial statements was constitutional. After reviewing the history of professional obligations imposed on attorneys, Chief Justice Rehnquist quoted from two cases that discussed the tension between a lawyer's First Amendment rights and his duty to preserve the fairness of the trial:

> "Of course, a lawyer is a person and he too has a constitutional freedom of utterance and may exercise it to castigate courts and their administration of justice. But a lawyer actively participating in a trial, particularly an emotionally charged criminal prosecution, is not merely a person and not even merely a lawyer . . . .
>
> He is an intimate and trusted and essential part of the machinery of justice, an 'officer of the court' in the most compelling sense."

*Gentile*, 501 U.S. at 1072, 111 S.Ct. 2720 (quoting Justice Frankfurter's dissent in *In re Sawyer*, 360 U.S. 622, 666, 668, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959)). Further, the Chief Justice emphasized that " '[c]ollaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures.' " *Id.* (quoting from *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). *Gentile* held that states strike a permissible balance between First Amendment rights of attorneys and the state's interest in fair trials when they prohibit attorney speech that poses a "substantial likelihood of materially prejudicing the proceeding." *Id.* at 1075–76, 111 S.Ct. 2720. The Court ultimately concluded, however, that Nevada's rule *as interpreted and applied* by the Nevada Supreme Court was unconstitutional for vagueness. *Id.* at 1049, 111 S.Ct. 2720. In so holding, the *Gentile* court noted that the grammatical structure of the rule was difficult and that the state court had given no clarifying interpretation. *Id.* (reversing the decision to sanction an attorney who had made pretrial statements).

Subsequent to this opinion, the American Bar Association ("ABA") examined its Model Rules of Professional Conduct and modified them in an attempt to meet the concerns articulated in *Gentile*. The Supreme Court of Illinois soon followed suit and amended its rules regarding trial publicity to read as follows.

Rule 3.6 Trial Publicity

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it would pose a serious and imminent threat to the fairness of an adjudicative proceeding.

(b) There are certain subjects which would pose a serious and imminent threat to the fairness of a proceeding, particularly when they refer to a civil matter triable to a jury, or a criminal matter. These subjects relate to:

> (1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;
>
> (2) in a criminal case, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's failure to make a statement;
>
> (3) the performance or results of any examination or test or the failure of a person to submit to an examination or test, or the nature of physical evidence expected to be presented;
>
> (4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case;

(5) information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial; or

(6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent unless proven guilty.

(c) Notwithstanding paragraph (a), a lawyer may state:

(1) the claim, offense or defense involved, and except when prohibited by law, the identity of the persons involved;

(2) information contained in a public record;

(3) that an investigation of a matter is in progress;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(7) in a criminal case, in addition to subparagraphs (1) through (6):

(i) the identity, residence, occupation, and family status of the accused,

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person,

(iii) the fact, time, and place of arrest, and

(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

(d) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyers' client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

(e) No lawyer in a firm, or government agency, or otherwise associated with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

Rule 3.8 Special Responsibilities of a Prosecutor

... (c) In addition to his or her obligations under Rule 3.6, a public prosecutor or other government lawyer in criminal litigation shall exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the public prosecutor or other government lawyer would be forbidden from making under Rule 3.6.

(d) The prosecutor in a criminal case shall refrain from making extrajudicial comments that would pose a serious and imminent threat of heightening public condemnation of the accused, except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose.

The plaintiffs complain that the rules are vague, overbroad, and foster a "chilling effect." The infirmity of Rule 3.6(b), according to the plaintiffs, is that unlike 3.6(a), it prohibits speech without regard to timing or any threat of prejudicing an adjudication. Also, subparagraphs (b) and (c) cannot be harmonized because (b) expressly prohibits communications that (c) allows. In addition, subparagraph (d) "allows attorneys with clients (i.e. non-prosecutors) to say anything necessary to mitigate 'recent adverse publicity.'" Compl. at ¶ 12. Plaintiffs claim this has the fur-

ther effect of chilling speech because of the fear that any public comments would trigger unbridled publicity by the other side. As for Rule 3.8, the plaintiffs contend that subparagraph (c) is unconstitutional because it imposes a duty on prosecutors to prevent conduct by persons over whom they have no legal or factual control and it extends the restrictions in Rule 3.6 to non-attorney third parties who are not subject to the ethical rules. It is also vague because prosecutors must guess at the means and manner of instructing third parties to refrain from prohibited communications.[1] Finally, Rule 3.8(d) imposes broader prohibitions than 3.6(a) and contradicts the safe harbor provision of 3.6(c), rendering the rule vague.

In November of 1999, some of the plaintiffs filed a petition in the Supreme Court of Illinois asking it to reconsider and stay the effect and enforcement of amended Rules 3.6 and 3.8. The Court asked the Supreme Court Committee on Professional Responsibility to respond to the petition, and the Committee did so, submitting a brief detailing what it believed to be a fair and constitutional interpretation of amended Rules 3.6 and 3.8. On March 16, 2000 the Supreme Court denied the petition without opinion and the amended rules went into effect. The plaintiffs now ask this court to enjoin the defendant from enforcing amended Rules 3.6 and 3.8.

The defendant moves to dismiss on the ground that the plaintiffs have not alleged a sufficient case or controversy to vest this Court with jurisdiction. In particular, the complaint does not allege with any specificity which kinds of communications the plaintiffs wish to make but are forbidden to make, nor does it allege that any disciplinary action has been initiated or even threatened against any of the plaintiffs. Furthermore, the defendant argues that the plaintiffs' contention of a "chilling effect" is belied by their own pleading, in

which they do not allege that they have refrained from making the communications necessary to fulfill their roles as prosecutors due to the enactment of the rules, but instead allege affirmatively that they have no intention of changing their conduct. Compl. at ¶ 24. Next, the defendant argues that the plaintiffs have no standing to allege First Amendment injury because the prosecutors act as officers of the government, which may control the expression of its own agents. Finally, the defendant argues that even if this court finds that the plaintiffs have standing, it should abstain from deciding this case so that the Supreme Court of Illinois may have the opportunity to construe its own rules in conformity with the First Amendment.

*Analysis*

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 294 (2d ed.1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Hentosh v. Herman M. Finch Univ. of Health Sciences,* 167 F.3d 1170, 1173 (7th Cir.1999); *Jang v. A.M. Miller & Assocs.,* 122 F.3d 480, 483 (7th Cir.1997). Dismissal is appropriate only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *Jones v. General Elec. Co.,* 87 F.3d 209, 211 (7th Cir.1996). However, the court is only obliged to accept as true the well-pleaded facts—it need not accept the plaintiffs' legal conclusions. *Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995).

1. The plaintiffs also argue that the rules force prosecutors to limit disclosures by the police and this is in contravention of Illinois laws.

However, the plaintiffs do not identify any of these laws in either their complaint or Response.

It is a fundamental principle of federal jurisdiction that federal courts may not render advisory opinions on abstract legal questions. *Wisconsin's Envtl. Decade, Inc. v. State Bar of Wis.*, 747 F.2d 407, 410 (7th Cir.1984) (citing *United Public Workers v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947)); *J.N.S. Inc. v. State of Ind.*, 712 F.2d 303, 305 (7th Cir.1983) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 81 L.Ed. 617 (1937) and *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)). Article III of the Constitution limits federal court jurisdiction to deciding only "cases" or "controversies," and a plaintiff who fails to allege a genuine case or controversy does not present a justiciable cause of action. *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). To satisfy Article III, the plaintiffs must allege: (1) an immediate threat of injury, (2) fairly traceable to the defendant's conduct, that (3) a favorable federal court decision likely would redress or remedy. *United States of America v. 5 S 351 Tuthill Road, Naperville, Ill.*, 233 F.3d 1017, 1022 (7th Cir. 2000) (citing *Lujan*, 504 U.S. at 561–62, 112 S.Ct. 2130). The rule is that:

> The power of a federal court to pass upon the constitutionality of a statute can be exercised only if the interests of the litigants require the use of this judicial authority for protection against actual interference with their rights.

*J.N.S.*, 712 F.2d at 305 (citing *Golden*, 394 U.S. at 110, 89 S.Ct. 956 and *United Public Workers*, 330 U.S. at 89–90, 67 S.Ct. 556). A First Amendment claim, like any other, must be presented in the context of a "specific live grievance." *Id.*

In this case, the plaintiffs claim interference with their rights to free speech under the First Amendment, and assert that the court can relieve their grievance by enjoining the defendant from enforcing Rules 3.6 and 3.8. The defendant's motion focuses on the first prong of the three-part test—that the plaintiffs do not allege an immediate threat of injury. Citing *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679 (7th Cir.1998), the plaintiffs counter that they do not have to wait to be prosecuted before they have standing to bring a First Amendment challenge. Otherwise, judicial review would never reach threatened speech, but only punished speech. They assert that they face a "reasonable likelihood of prosecution," because their intended conduct is proscribed by the ethical rules and because the defendant has refused to acknowledge that the rules would be enforced only in conformity with constitutional limitations. *See id.*

We are not persuaded that the plaintiffs have met their burden of showing an immediate threat of injury. *See Family & Children's Ctr., Inc., v. School City of Mishawaka*, 13 F.3d 1052, 1059 (7th Cir. 1994) (stating that it is the plaintiff's burden to establish all three elements of the test for justiciability). It is true that a litigant need not be the subject of some administrative or judicial proceeding in order to establish an actual controversy. *See J.N.S. Inc.*, 712 F.2d at 305 (citing *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505(1974)). But the plaintiff must show an "actual or imminent" injury that is "concrete and particularized." *Family & Children's Center, Inc.*, 13 F.3d at 1059. The plaintiffs must show that the threat of prosecution is more than just speculative, *Commodity Trend Serv., Inc.*, 149 F.3d at 687, which means establishing a more immediate threat than simply a general policy of enforcing laws. *J.N.S. Inc.*, 712 F.2d at 305 (citing *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)).

### A. The Plaintiffs Have Not Shown Their Intended Conduct Is Proscribed Under Rules 3.6 And 3.8.

As an initial matter, it is quite unclear whether the plaintiffs' intended conduct is

proscribed by the amended rules. There are two related problems here. The first is that the plaintiffs have not stated with any particularity what they wish to communicate that would violate the rules. A similar problem was presented in *National Council for Improved Health v. Shalala*, 122 F.3d 878 (10th Cir.1997), where the plaintiffs argued that regulations governing what health claims drug manufacturers may make on their product labels violated the First Amendment. The plaintiffs, however, gave no examples of claims they wished to make that were prohibited. *Id.* at 884. The Tenth Circuit concluded that "[w]hen we are left to speculate as to the nature of the claim plaintiffs may desire to make, and the treatment such a hypothetical claim may receive under the regulations, plaintiffs have failed to allege a sufficient injury in fact." *Id.* (discussing in particular *United Public Workers*, 330 U.S. 75, 67 S.Ct. 556 (1947)).

The second problem is that the rules have not been construed by any Illinois courts, so there is some doubt as to how they would be interpreted. The Seventh Circuit has found the likelihood of prosecution to be speculative in situations where the law is unsettled and is fairly susceptible to an interpretation that could obviate the feared prosecution. *See Wisconsin's Envtl. Decade, Inc.*, 747 F.2d at 412–413 (finding uncertainty as to whether the plaintiff's activities would constitute the unauthorized practice of law because the Wisconsin Supreme Court could interpret the law in a manner that would not apply to those activities); *J.N.S., Inc.*, 712 F.2d at 306 (finding that prosecution was too speculative where the Indiana law in question could be interpreted in a less stringent fashion than the parallel federal law, and the less stringent interpretation would

not result in the plaintiff's prosecution). As noted above, the plaintiffs do not identify with any specificity what speech they wish to engage in that is barred under the amended rules. Instead, they offer an interpretation of the rules and argue that their communications are generally proscribed or hampered under this interpretation.[2] However, the defendant has offered an alternate interpretation of the rules that avoids these concerns.

The plaintiffs offer a curious response: not that the defendant's interpretation is untenable, nor that the rules are not fairly susceptible to an interpretation that would render them constitutional. Instead, the plaintiffs argue that because this court must accept all of their well-pleaded allegations as true and resolve all doubts and inferences in their favor, the "[d]efendant's statutory constructions only support a 12(b)(6) motion if they are the only possible statutory constructions and they also remove their constitutional infirmity." Response, at 8 (stating also that "[t]he [d]efendant has not identified even one allegation in the complaint that the Court must reject as a matter of construction"). This argument is incorrect as a matter of law. This court is not bound to accept as true the plaintiffs' interpretation or characterization of the law. *Northern Trust Co.*, 69 F.3d at 129; *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 183 (7th Cir.1986).

Our review of the challenged portions of rules 3.6 and 3.8 leads us to agree with the defendant that they may be fairly interpreted in a manner that complies with the First Amendment. The plaintiffs construe Rule 3.6(b) as imposing prohibitions on speech independent of those articulated in

---

2. The plaintiffs rely heavily on *Commodity Trend Serv., Inc.*, to show that they face a credible threat of prosecution. In that case, the plaintiff alleged a specific intention to disseminate more than "incidental" impersonal trading advice without registering as a "commodity trading adviser." 149 F.3d at 687. The court determined that the plaintiff had properly alleged an intention to engage in conduct proscribed by the *plain terms* of the Commodity Exchange Act. *Id.* (noting also that the defendant had formally taken the position that registration would be required under such circumstances). The plaintiffs' allegations in the instant case do not approach this level of concreteness.

subparagraph (a). Therefore, they complain that 3.6(b) is vague and overbroad because it is not limited with respect to timing or the danger presented to the fairness of the adjudicatory proceedings. However, read in the context of the entire rule, subparagraph (b) is easily understood as relating back to subparagraph (a). It sets forth categories of speech that would pose a risk to the fairness of the adjudicatory proceedings, reiterating the standard of "serious and imminent threat" set forth in subparagraph (a). It can reasonably be interpreted as an illustrative list of the kinds of subjects that are prohibited under subparagraph (a). As such, it relies on subparagraph (a) to supply the proscriptive language, (i.e. "a lawyer ... shall not"), another indication of the connection between the two subparagraphs. Plaintiffs have raised no challenge to the constitutionality of subparagraph (a).

When the rule is read in this way, the plaintiffs' concern that the safe harbor provisions of subparagraph (c) contradict subparagraph (b) evaporates. If 3.6(b) is read in conjunction with subparagraph (a), then the safe harbor provisions of (c) apply to the generally prohibited categories of discourse enumerated in (b).

The plaintiffs' apprehensions about subparagraph (d), the part of the rule that permits attorneys to mitigate the consequences of adverse publicity where the fairness of the adjudicatory proceeding is endangered, also rest on their improbable construction of the rule. The plaintiffs suggest that the rule is irrational, unfair, and fosters a "chilling effect" because it permits one side unbridled freedom from the strictures of Rule 3.6 to respond to adverse publicity. But the rule plainly states that any extrajudicial statements must be "limited to such information as is necessary to mitigate the recent adverse

publicity." It seems clearly the intent of subparagraph (d) to provide attorneys with a shield from unfair publicity, not a sword to damage their opponent's case. The plaintiffs have offered no sound reason to interpret the rule as applying only to non-prosecutors, nor can we discern any such intention from the language of the rule.

Plaintiffs also take issue with Rule 3.8(c), which imposes a duty on prosecutors to exercise "reasonable care" to prevent "investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor" from making extrajudicial statements that the prosecutor himself or herself would be prohibited from making under the ethical rules. The plaintiffs profess an inability to discern what they are required to do under this rule.[3] We think the argument is specious. Certainly the ethical rules need not spell out a prosecutor's obligations to every conceivable person in every conceivable situation in order to avoid a vagueness challenge. *See Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (finding clear what the law "as a whole prohibit[ed]" and noting that "mathematical certainty" cannot be expected); *Gentile v. State Bar of Nevada,* 501 U.S. at 1078–79, 111 S.Ct. 2720 (dissenting opinion) (stating that a rule is void for vagueness when it does not give an individual fair notice and adequate warning that his conduct runs afoul of the law). The rule enumerates specific categories of persons to whom a prosecutor must direct his efforts to prevent extrajudicial statements. The permitted and prohibited categories of statements are also spelled out with specificity in Rule 3.6. Even though prosecutors must identify persons fitting into the broader category of "others assisting or

---

3. "Whom must the prosecutor prevent, exhort or counsel? ... When and how can prosecutors discharge their uncertain duties to prevent, exhort, or counsel conduct by these uncertain populations of third parties? Will an annual advisory to the Chief of Police by the chief prosecutor cover the police department? Or should the prosecutors advise individual police at trial? At motions to suppress? At the grand jury? At initial screening? Once? Twice? Every time a prosecutor meets the officers on a case?" Response, at 12.

associated with the prosecutor in a criminal case," this would rarely present a problem. For example, other professional rules impose obligations on attorneys to take measures to ensure that others, such as associates, other supervised attorneys, and nonlawyer assistants, comply with the ethical rules. *See* ILL. R. PROF'L CONDUCT 5.1, 5.3. We cannot say that the rule is vague simply because it requires professionals to make the necessary effort to determine who these individuals are.[4] As to what efforts are required, the rule applies an objective "reasonable care" standard to the prosecutor's obligations. What constitutes "reasonable care" may vary depending on the circumstances of the particular case, but this is no basis for declaring an objective standard unconstitutional. According to the ABA's Ethics 2000 Commission report, "[o]rdinarily the reasonable care standard will be satisfied if the prosecutor issues the appropriate cautions to law-enforcement personnel and other relevant individuals." ABA Ethics 2000 Commission on Evaluation of the Rules of Prof'l Conduct, *Report on the Evaluation of the Model Rules of Professional Conduct,* Proposed Rule 3.8, comment [6], Nov. 2000, http://www.abanet.org/cpr/e2k-rule38.html.[5] We think this is a reasonable interpretation and one that the Supreme Court of Illinois is likely to use, in view of the fact that its own amendments to the ethical rules were modeled on the ABA's amendments to the Model Rules of Professional Conduct.

The plaintiffs next complain that Rule 3.8(c) operates unconstitutionally to extend the restrictions in Rule 3.6 to non-attorney third parties. We find this an untenable interpretation of the rule. The rule specifically imposes obligations only on prosecutors, and the obligation is to exercise "reasonable care" to prevent third parties from making statements the *prosecutor* should not make. In other words, the rule prevents prosecutors from getting around the ethical prohibitions on speech by simply allowing non-attorneys on the prosecution team to make prejudicial statements. More fundamentally, however, non-attorneys are not sanctionable by the Supreme Court of Illinois under the Illinois Rules of Professional Conduct, and thus, are not themselves subject to any sanction.

Plaintiffs further argue that Rule 3.8(d) contradicts the safe harbor provision of 3.6(c) and (d). We agree with the defendant that the restrictions in Rule 3.8(d) may be fairly construed to permit the commentary specifically allowed under Rule 3.6(c) and (d). The plaintiffs agree that this is a "potential" construction of Rule 3.8(d). It is more than that, however; the plaintiffs' construction ignores the well-established principle that "each part or section should be construed in connection with every other part of section so as to produce a harmonious whole." 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:05, at 154 (6th ed.2000) (citing Illinois cases).

Finally, the plaintiffs argue that the rule is unconstitutionally overbroad because it prohibits statements that would "pose a serious and imminent threat of heightening public condemnation of the accused." When evaluating the constitutionality of a restriction on an attorney's speech, we bal-

---

4. The Preamble to the Illinois Rules of Professional Conduct observes that ethical responsibilities are not always simple matters and can sometimes mean making difficult decisions. The Preamble notes that "[l]awyers are trained to make just such decisions, however, and should not shrink from the task. To reach correct ethical decisions, lawyers must be sensitive to the duties imposed by these rules and, whenever practical, should discuss particularly difficult issues with their peers."

5. The Ethics 2000 Commission of the ABA was formed to conduct a comprehensive review of the Model Rules of Professional Conduct in 1997. *Id.,* Chair's Introduction and Summary, http://www.abanet.org/cpr/e2k-intro_summary.html. The Commission issued its Report after 40 months of "thorough research, scholarly analysis and thoughtful consideration" and will be submitted to the ABA House of Delegates in the summer of 2001. *Id.*

ance the State's interest in regulating the legal profession against the lawyer's interest in the speech at issue. *See Gentile,* 501 U.S. at 1073, 111 S.Ct. 2720 (citing cases where this standard was applied). Here, the prohibition is expressly limited, allowing prosecutors to make statements that "inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose." The Plaintiffs do not explain why they believe the First Amendment guarantees a prosecutor the right to speech that heightens condemnation of the accused but neither serves any law enforcement function nor informs the public of the prosecutor's action. Nor do they cite any authority for such a right. We believe that, in fact, there is no such right. In any event there is no basis for finding that the rule is unconstitutionally overbroad.

We note that we are not holding that amended Rules 3.6 and 3.8 are constitutional. Our holding is simply that the rules are fairly susceptible to an interpretation that would render them constitutional, so that we "cannot discount the possibility that the purported controversy" concerning the constitutionality of these ethical rules "may prove to be nonexistent." *See Wisconsin's Envtl. Decade, Inc.,* 747 F.2d at 411 (observing that one factor in determining whether a case or controversy exists is whether "the possibility exists that state courts might construe state law in a manner that would avoid the asserted federal constitutional difficulty"). Here, the "possibility" of a constitutional reading exists with extra force, where the rules were revised by the ABA and the Supreme Court of Illinois specifically to meet constitutional concerns the United States Supreme Court articulated in *Gentile.* Because the supposed injury may never materialize, we conclude that the plaintiffs have failed to present a justiciable case.

**B.** ***The Plaintiffs Fail To Allege Any Facts Supporting Their Allegation That Prosecution Is Reasonably Likely.***

 Beyond the problem of showing that their intended speech is proscribed by the rules, the plaintiffs also fail to allege any facts suggesting that a prosecution is imminent under any interpretation of the rules. As noted earlier, a general policy of enforcing rules is not enough.

> Before a plaintiff may obtain an injunction against a future enforcement he must show some substantial hardship—the enforcement must be certain and the only impediment to the case's ripeness is a delay before its eventual prosecution.

*Crosetto v. State Bar of Wisc.,* 12 F.3d 1396, 1403 (7th Cir.1993) (citing *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). In *Crosetto,* the plaintiffs brought suit against several defendants, including the Justices of the Wisconsin Supreme Court, the Wisconsin State Bar, and the Executive Director of the Wisconsin State Bar alleging that compulsory dues and membership in the Wisconsin bar violated their rights to free speech and due process. *Crosetto v. Heffernan,* 771 F.Supp. 224 (N.D.Ill.1990) (seeking declaratory relief, compensatory relief, and punitive damages pursuant to 42 U.S.C. § 1983). The case against the Justices was brought (in part) in their capacity as enforcers of the court rules. *Id.* at 225. The Seventh Circuit agreed with the district court that no case or controversy existed because the plaintiffs could not identify any lawyer who had ever been disciplined for failing to pay dues to the bar. *Crosetto v. State Bar of Wis.,* 12 F.3d at 1403 (denying injunctive relief to the plaintiffs and dismissing the case against the Justices).[6]

---

**6.** The Seventh Circuit affirmed dismissal of the case against the Executive Director on grounds of qualified immunity, *id.* at 1404, and, ultimately against the Wisconsin State Bar on sovereign immunity grounds. *Crosetto v. State Bar of Wisc.,* 97 F.3d 1454, Nos. 96–1118, 96–1211, 1996 WL 536496, at *1 (7th Cir. Sept.17, 1996).

Similar circumstances are presented here. The amended rules have been in effect since at least March of 2000, and the plaintiffs have continued to make the communications necessary to fulfill their duties as State's Attorneys. *See* Complt. at ¶ 24. There is no allegation that during this time period any of the plaintiffs have been charged with a violation of the rule, that any similarly situated individuals have been charged, *see Crosetto*, 12 F.3d at 1403, or that any plaintiff has been investigated for prospective enforcement. *Commodity Trend Serv., Inc.*, 149 F.3d at 688 (the defendant had subpoenaed documents and taken witness statements in its investigation of the plaintiff). The Seventh Circuit has found that there is no reasonable likelihood of prosecution in cases with more threatening circumstances than those presented here. *See Wisconsin's Envtl. Decade, Inc.*, 747 F.2d 407 (finding legal consequences to plaintiff remote even though the Unauthorized Practice Committee recommended that defendant initiate proceedings against the plaintiff, but the defendant had not followed up on the recommendation); *J.N.S., Inc.*, 712 F.2d 303 (finding prosecution under racketeering laws speculative even though plaintiff had been charged twice with obscenity, which could arguably trigger a racketeering prosecution).

The plaintiffs rely on *Commodity Trend Serv.* for the proposition that it is sufficient to allege that the government has refused to acknowledge that it will not prosecute them. However, the facts in *Commodity Trend Serv., Inc.* are readily distinguishable from those we have here. In that case, the government agency had (1) taken the formal position that the activities the plaintiff was engaging in were illegal, (2) initiated prosecution against a similarly situated entity for the same conduct in which the plaintiff intended to engage, and (3) the government agency had begun an intensive investigation of the plaintiff. Nothing of the sort is alleged here. The plaintiffs have cited no cases involving circumstances similar to theirs in which a court has found a real threat of prosecution.

Because the plaintiffs have failed to allege a justiciable case or controversy, we need not address the defendant's other arguments in support of the motion to dismiss.

### CONCLUSION

The defendant's motion to dismiss is granted. The cause is dismissed for lack of a justiciable case or controversy.